***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. Plaintiff not shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The North Carolina Industrial Commission properly has jurisdiction over the parties. *Page 2 
2. The parties are subject to the North Carolina Workers' Compensation Act.
3. An employment relationship existed between decedent-employee and defendant-employer on the date of injury.
4. Defendant-employer was insured by Insurance Company of the State of North Carolina (Zenith Insurance Company).
5. Decedent-employee last worked for defendant-employer in February 1996.
6. Plaintiff is claiming entitlement to temporary total disability compensation, permanent total disability compensation, medical benefits and death benefits.
7. Defendants contend plaintiff is not entitled to any additional benefits in addition to those already paid.
8. The dates during which plaintiff alleges entitlement to temporary total disability compensation are February 1996 to the date of death on July 1, 1996.
9. The date of accident was August 30, 1995.
10. Decedent-employee died on July 1, 1996.
11. At the time of the accident, decedent-employee's average weekly wage was $374.00 with a corresponding compensation rate of $249.34.
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Decedent-employee, at the time a 60-year-old equipment operator working for defendant-employer, suffered a compensable injury to his right leg on August 30, 1995. *Page 3 
2. On that date, a tree limb fell and hit decedent-employee's leg, causing minor cuts and bruising.
3. Decedent-employee had a history of heart disease, angina, syncope, smoking more than 80 packs of cigarettes per year and vascular disease in both legs, especially in the right leg, prior to his injury on August 30, 1995.
4. On August 30, 1995, decedent-employee then presented to Carolina Urgent Care Center, where he was diagnosed with a contusion/abrasion of the right leg.
5. Thereafter, decedent-employee returned to Carolina Urgent Care Center several times for conservative treatment of this contusion/abrasion with no evidence of fracture or significant complication.
6. Decedent-employee thereafter returned to work with defendant-employer on October 10, 1995.
7. Defendants provided medical compensation and temporary total disability benefits from September 1, 1995 until October 10, 1995, when decedent-employee returned to work with defendant-employer.
8. On February 27, 1996, decedent-employee presented to Dr. William C. Dengler, Jr. for treatment of his foot pain, mostly in the right foot. Dr. Dengler diagnosed him with multi-level bilateral artherosclerotic vascular disease, a likely right iliac artery occlusion and further distal disease. Dr. Dengler noted that decedent-employee's medical problems and severe vascular disease would likely severely limit treatment options.
9. At no time in any of his medical records did Dr. Dengler mention decedent-employee's August 30, 1995 injury.
10. Decedent-employee was taken out of work in February 1996. *Page 4 
11. On April 17, 1996, decedent-employee returned to Dr. Dengler, who noted that he suffered from significant carotid stenosis, organic heart disease and pulmonary problems. Dr. Dengler opined that treatment of decedent-employee's right leg problems would be difficult due to his poor cardiac and pulmonary reserve, and he recommended that decedent-employee undergo a graft/bypass procedure.
12. On April 23, 1996, Dr. G. Tillman Bailey, III performed an aortogram, which revealed a complete occlusion of the right common iliac artery, as well as occlusion of the left leg arteries.
13. On May 13, 1996, Dr. Dengler performed a right axillofemoral bypass/graft. Prior to surgery, he noted that decedent-employee suffered from severe limb-threatening ischemia of the right leg and severe organic heart disease.
14. On May 31, 1996, Dr. Dengler discovered that decedent-employee suffered from an infection at the graft site in his right groin.
15. Thereafter, Dr. Dengler performed an excision of decedent-employee's axillofemoral bypass/graft due to infection and thrombosis.
16. Dr. Dengler then recommended decedent-employee undergo a right leg amputation, noting that decedent-employee suffered from organic heart disease and severe, lifestyle-limiting chronic obstructive pulmonary disease.
17. Decedent-employee thereafter died on July 1, 1996, prior to undergoing the amputation.
18. On July 2, 1996, Dr. Louis A. Levy performed an autopsy of decedent-employee's body with Dr. Dengler's permission. *Page 5 
19. The autopsy revealed that decedent-employee's cause of death was congestive heart failure. Dr. Levy specifically determined that decedent-employee's August 30, 1995 work-related injury in no way contributed to or caused his death. Dr. Levy met with Ms. Cobb, the current plaintiff in this matter, and specifically discussed and evaluated a possible causal connection between the decedent's work related injury and his death. Dr. Levy noted in the "Autopsy Report" the following:
 An unrestricted autopsy permit was signed by the daughter but while she was being interviewed, she mentioned some leg trauma which occurred approximately 6-8 months prior to his death from which he reportedly never adequately recovered. Review of the medical records from the Urgent Care Center and Boice Willis Clinic show that the trauma was relatively minor and unassociated with vascular injury, fracture or deep soft tissue injuries and he already, at that time, had documented severe peripheral vascular disease. The possibility of medical examiner's case due to accident was entertained and upon receipt of the medical records and consultation with Dr. Butts, it was determined that although there was some prior injury, this was not a predisposing factor and approximate cause cannot be assigned to the leg injury.
The "Autopsy Report" reflects that Dr. Levy came to this conclusion regarding the cause of death after consulting with Dr. John D. Butts, who is the medical examiner for the State of North Carolina.
20. Dr. Dengler thereafter signed the death certificate, indicating that the sole cause of decedent-employee's death was congestive heart failure.
21. Dr. Dengler did not list an accident or any other event as a contributing factor to decedent-employee's death, although there were specific areas in which to do so on the certificate and indication of a contributing factor such as an accident is required by North Carolina State law. *Page 6 
22. On August 12, 1996, Dr. Dengler wrote a letter to plaintiff, which specifically indicated that "your father died from problems that we knew he had with his lungs and heart."
23. Plaintiff filed a Form 18 on August 28, 1997, notifying defendants of decedent-employee's death.
24. On November 25, 1997, defendants filed a Form 28B, reporting the date of final compensation as October 10, 1995.
25. On that same date, defendants also filed a Form 61, denying plaintiff's claim for benefits.
26. Plaintiff thereafter filed a Form 33 on January 27, 2009, requesting benefits for decedent-employee's August 30, 1995 injury and subsequent death.
27. Defendants filed a Form 33R, contending that plaintiff's claim was not brought in the name of the proper party, plaintiff's claim was time barred pursuant to N.C.G.S. § 97-47 and the doctrine of laches, defendants had been prejudiced by the substantial delay in filing the claim, and denying compensability because decedent-employee's death was not causally related to his August 30, 1995 injury.
28. On November 2, 2009, Dr. Dengler wrote a letter at the request of plaintiff's counsel, indicating the following:
 Mr. Smith's death on July 1, 1996 was caused by his severe heart disease and was not directly related to his leg injury. The only relationship was that the presence of peripheral vascular disease statistically increased the risk of death at any point from cardiac disease. The autopsy bears this out.
29. Subsequently, Dr. Dengler wrote a significantly altered letter, also dated November 2, 2009 just two days prior to the hearing, but not disclosed until weeks later, which read, "Mr. Smith's death on July 1, 1996 was caused by the initial leg injury and treatments at *Page 7 
salvaging his limb. The metabolic stress and sepsis caused by the non-healing and infected leg wound as well as the graft infection, precipitated his congestive heart failure and ultimate death."
30. Based on the preponderance of the evidence of the record, the Full Commission finds that, based on the opinions of Dr. Levy and the conclusions contained in the official autopsy report, decedent-employee's death was not causally related to the August 30, 1995 injury. The Full Commission further assign less weight to Dr. Dengler's recent testimony regarding causation given his prior inconsistent statements, letters and verification of decedent-employee's death certificate.
31. Based on the preponderance of the evidence of the record, the Full Commission finds that Plaintiff has failed to carry her burden of proving that decedent-employee was disabled from February 1996 to July 1, 1996 as a result of the August 30, 1995 injury by accident.
32. Based on the preponderance of the evidence of the record, the Full Commission finds that Plaintiff has failed to carry her burden of proving that decedent-employee's July 1, 1996 death was causally related to the August 30, 1995 injury.
 ***********
Based upon the foregoing Stipulations, and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. It is well established in North Carolina that the plaintiff bears the burden of proving that his or her claim for benefits is compensable. Henry v. A. C. Lawrence Leather Co.,231 N.C. 477, 479, 57 S.E.2d 760, 761 (1950). If the plaintiff fails to prove that the at-work accident either caused the compensable injury, or significantly aggravated or accelerated a pre-existing *Page 8 
condition, then plaintiff's claim for benefits will be denied.See generally Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
2. Plaintiff has failed to prove that her claim for benefits between February 1996 and July 1, 1996 is compensable. She has failed to carry her burden of proving that her claims for temporary total disability, permanent total disability or any other benefits under the Workers' Compensation Act are a result of the August 30, 1995 injury or in any way compensable. N.C. Gen. Stat. § 97-18; 97-29; 97-30.
3. Plaintiff has failed to carry her burden of proving that decedent-employee's August 30, 1995 injury was causally connected to his death on July 1, 1996. N.C. Gen. Stat. § 97-38.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff has failed to carry her burden of proving that she is entitled to any benefits under the Workers' Compensation Act for decedent-employee's August 30, 1995 injury or inability to work between February 1996 and July 1, 1996. Plaintiff's claim for benefits is hereby DENIED.
2. Plaintiff has failed to carry her burden of proving that she is entitled to death benefits as a result of decedent-employee's August 30, 1995 injury. There is no causal connection between decedent-employee's August 30, 1995 injury and his subsequent death. Plaintiff's claim for benefits is hereby DENIED.
3. Each side shall pay its own costs. *Page 9 
This the ___ day of July 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1